## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

ZANE CAGLE, Individually, and in a )
Representative Capacity for all Persons )
Identified by R.S. Mo. § 537.080, )
           )
        Plaintiff, )
           )     No. 4:21CV1431 RLW
v. )
           )
NHC HealthCare-Maryland Heights, LLC, et al., )
           )
        Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand (ECF No. 21).  This matter is fully briefed and ready for disposition.  The Court finds federal jurisdiction lacking and grants Plaintiff's Motion to Remand.

## BACKGROUND

On or around April 18, 2020, Willis Marion Cagle was admitted to NHC Maryland Heights, a skilled nursing facility, because he was unable to care for himself.  (Plaintiff's Petition for Damages ("Petition" or "Pet.", ECF No. 13, ¶ 71). In early to mid-May 2020, NHC Maryland Heights confirmed positive cases of COVID-19 at its facility.   (Pet., ¶ 76).   Willis was quarantined in the facility due to the COVID-19 outbreak.  (Pet., ¶ 78).  On or around May 20, 2020, Willis tested positive for COVID-19.  (Pet., ¶ 82).  By May 29, 2020, Willis exhibited symptoms of COVID-19.  (Pet., ¶ 83).  Willis's family insisted that he be transported to the hospital on May 29, 2020.  (Pet., ¶ 84).  On June 12, 2020, Willis died from COVID-19.  (Pet., ¶ 85).  Plaintiff filed a Petition in the Circuit Court of St. Louis County, claiming that Defendants

1

were negligent in their response to the COVID-19 pandemic and alleging claims for Wrongful Death (Count I), Negligence Per Se as a Result of Violation of Regulations (Count II), and Lost of Chance of Survival Pursuant to § 537.021, R.S. Mo. (Count III).  (ECF No. 13).  In Count I, Plaintiff alleges Defendants are liable for negligence based upon the following:

a.   Failing to follow proper guidelines in place for the prevention of COVID-19 outbreaks in long-term care facilities;

b.   Failing to ensure its staff was not allowed to work at NHC Maryland Heights when they exhibited sings and symptoms consistent with COVID-19;

c.   Failing to instruct, train, and/or monitor staff regarding the appropriate use of personal protective equipment and infection control protocols;

d.   Failing to properly respond to the presence of COVID-19 in the facility to prevent spread;

e.   Failing to timely request additional staff, resources, and other assistance from the public health entities available to respond to COVID-19;

f.   Failing to quarantine residents with signs and symptoms of COVID-19 from the remaining resident population;

g.   Failing to assign staff members in such a manner as to prevent contact with both COVID-19 positive and negative residents;

h.   Failing to adhere to social distancing guidelines put in place in March 2020 to keep its residents safe from being exposed to COVID-19;

i.   Failing to timely and consistently assess, re-assess and document Willis Cagle's physical condition;

j.   Failing to properly supervise and train Defendants' agents and/or servants who were responsible for the care, treatment, and oversight of Willis Cagle;

k.   Failing to carry out and follow standing orders, instructions, and protocol regarding the prevention of COVID-19;

l.   Failing to provide adequate training to staff regarding prevention of COVID-19;

m.   Failing to implement appropriate interventions and thereby allowing Willis to be exposed to COVID-19 in the defendant facility;

n.   Failing to document changes in Willis's condition;

o.   Failing to adequately, accurately and timely monitor Willis's changes in condition;

p.   Failing to timely respond to Willis's change in condition;

q.   Failing to timely advise Willis's family and doctor of his change in conditions; and

r.   Failing to seek timely emergency treatment for Willis Cagle.

(Pet., ¶ 94).[1]

## I.   Plaintiff's Motion to Remand (ECF No. 21)

## A.   Standard of Review

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (quoting

---

[1] Plaintiff's Petition also purports to raise a "Constitutional Challenge" on the following grounds: (1) Section 537.600, et seq., R.S. Mo., "which establishes sovereign immunity, violates Article I, § 1 and Article I, § 14 of the Missouri Constitution"; (2) the doctrine of official immunity violates Article I, § 2 and Article I, § 14 of the Missouri Constitution; (3) § 538.225, R.S. Mo. violates Plaintiff's right to open courts and a certain remedy for every injury, guaranteed by Article I, § 14 of the Missouri Constitution, violates Plaintiff's right to trial by jury, guaranteed by Article I, § 22(a) of the Missouri Constitution, violates separate of powers, established by Article II, § 1 of the Missouri Constitution, violates the separation of powers, established by Article II, §1 of the Missouri Constitution, and "violates the requirement that any law amending or annulling a Supreme Court rule of practice, procedure, or pleading be limited to that purpose, established by Article V, Section 5 of the Missouri Constitution." (Pet., p. 17).

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A civil action brought in state court may be removed to a federal district court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a); *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010) ("A defendant may remove a state law claim to federal court only if the action originally could have been filed there."). Removal statutes are strictly construed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941). The party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction, and doubts about federal jurisdiction are resolved in favor of remand. *In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993); *Mensah v. Owners Ins. Co.*, 951 F.3d 941, 943 (8th Cir. 2020) (court must resolve all doubts about federal jurisdiction in favor of remand to the state court). The party seeking removal and opposing remand has the burden of establishing federal subject matter jurisdiction by a preponderance of the evidence. *Turntine v. Peterson*, 959 F.3d 873, 881 (8th Cir. 2020).

The Constitution extends the judicial power of the federal courts to controversies "between Citizens of different States," U.S. Const. art. III, § 2, and Congress enacted legislation to give federal courts "original jurisdiction of all civil actions 'between ... citizens of different States,'" *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (ellipsis in original) (quoting 28 U.S.C. § 1332(a)(1)). Such "[d]iversity jurisdiction requires 'complete diversity, that is where no defendant holds citizenship in the same state where any plaintiff holds citizenship.'" *Hubbard v. Federated Mut. Ins. Co.*, 799 F.3d 1224, 1227 (8th Cir. 2015) (quoting *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010)); *Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079, 1084 (8th Cir. 2017).

In the absence of diversity jurisdiction, removal of an action to federal court is proper only if the claim raises a federal question. *Peters v. Union Pac. Ry. Co.,* 80 F.3d 257, 260 (8th Cir. 1996). Jurisdiction based on a federal question arises in "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983).

An "exception to the well-pleaded complaint rule is a statute that carries complete preemptive force that may transform petitions pleading solely state claims into ones stating a federal claim." *Yarnell v. Clinton No. 1, Inc.*, No. 4:21-CV-00702, 2022 WL 1716244, at *1–2 (W.D. Mo. Mar. 16, 2022) (citing *Peters*, 80 F.3d at 260). "Once an area of state law has been completely preempted, any claim based on that preempted state law claim is considered ... to raise a federal claim and therefore arises under federal law." *Peters*, 80 F.3d at 260.

## B.  Discussion

In the Notice of Removal, Non-Forum Defendants NHC HealthCare-Maryland Heights, LLC, NHC/OP, LP, NHC/Delaware, Inc. and NHC HealthCare Corporation (Delaware) ("Removing Defendants") argue that this Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(1) and § 1441(a)-(b), because there exists complete diversity between properly joined parties and the amount in controversy exceeds $75,000.  (Notice of Removal, ECF No. 1, ¶ 102).   Removing Defendants further contend that this Court has original jurisdiction over this action under 28 U.S.C. § 1331 because State law claims are completely preempted by the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C.

§§ 247d-6d, 247d-6e, and thus, Plaintiff's claims arise under Federal law.  (Notice of Removal, ¶ 103).  Alternatively, Defendants assert this Court has original jurisdiction over this action under 28 U.S.C. § 1331 and the *Grable*[2] doctrine because the Petition for Damages presents embedded Federal questions.  (*Id.*)  Finally, Defendants argue that this Court has original jurisdiction over this action under 28 U.S.C. § 1442(a) because they acted at and upon the direction, guidance, recommendation, and advice of the United States Government and Federal Officers.  (Notice of Removal, ¶ 104).

Removing Defendants were each served with the Petition on November 23, 2021.  (ECF No. 1-8, pp. 59-62). Removing Defendants filed their Notice of Removal on December 7, 2021.  (ECF No. 1).  Plaintiff moved the Court to remand this action to the Circuit Court of St. Louis County on January 3, 2022.   (ECF No. 21). On February 1, 2022, Plaintiff served Forum Defendants Susan Morley-Taylor and Jeffrey Loraine, who are citizens of Missouri.  (ECF Nos. 32, 33).[3]

In their opposition to the Motion for Remand (ECF No. 27), Defendants argue that this Court has diversity jurisdiction under the "snap removal" doctrine.   In the alternative, Defendants claim that the PREP Act completely preempts Plaintiff's state law claims or that subject matter jurisdiction exists under the *Grable* doctrine or the Federal officer removal statute.

---

[2] *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mgf.*, 545 U.S. 308 (2005).
[3] Although Plaintiff states that Susan Morley-Taylor and Jeffrey Loraine are "residents of the State of Missouri" (ECF No. 35 at 2), removal under 28 U.S.C. § 1332 requires that the plaintiff be of different citizenship than the defendants.  No party disputes that Susan Morley-Taylor and Jeffrey Loraine are citizens of Missouri.  *See also* Petition, ECF  No. ¶¶ 42, 43.

1. **Diversity Jurisdiction**

   a. **Snap Removal**

A case must be remanded if, at any time, it appears that the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c); Fed. R. Civ. P. 12(h)(3). Diversity jurisdiction requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. 28 U.S.C. § 1332(a)(1). Diversity jurisdiction exists to protect out-of-state litigants from local prejudices. *See* 16 James Wm. Moore, et al., *Moore's Federal Practice*, § 107.55[1] (3d ed. 2021). For that reason, the forum defendant rule—codified at 28 U.S.C. § 1441(b)(2)— prohibits removal based on diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." The statute's "joined and served" language "prevent[s] plaintiffs from joining, but not serving, forum defendants to block removal" by out-of-state defendants. *Perez v. Forest Lab'ys, Inc.*, 902 F. Supp. 2d 1238, 1245 (E.D. Mo. 2012).

28 U.S.C. §1441(b)(2), the "forum defendant" rule, provides that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  Plaintiff Zane Cagle is a citizen of the state of Missouri.   At the time of removal (December 7, 2021), Defendants NHC HealthCare-Maryland Heights, LLC; NHC/OP, L.P.; NHC/Delaware, Inc.; and National HealthCare Corporation (Delaware) were citizens of other states, Delaware and Tennessee. (ECF No. 27 at 5). Plaintiff served Forum Defendant Susan Morley-Taylor and Forum Defendant Jeffrey Lorraine on February 1, 2022 (ECF Nos. 32, 33). Removing Defendants argue that "section 1441(b)(2)'s plain language allows for removal until a forum defendant has been served."

*Tillman v. BNSF Ry. Co.*, No. 1:20 CV 00178 SNLJ, 2021 WL 842600, at *2 (E.D. Mo. Mar. 5, 2021); (ECF No. 27, p. 4 (citing *Tillman*)).

Although the Eighth Circuit has not addressed the propriety of snap removals, the Eastern District of Missouri has taken three different approaches: (1) permitting snap removals based on the plain language of the statute, *see, e.g., Tillman*, 2021 WL 842600, at *3; (2) remanding snap removals because they are inconsistent with the legislative intent behind the forum defendant rule and the purpose of removal, *see, e.g.*, *Laster v. Monsanto Co.*, No. 4:18-CV-397 CAS, 2018 WL 1566846, at *3 (E.D. Mo. Mar. 30, 2018); and (3) allowing snap removals only when at least one defendant has been served, based on a construction of the word "any" in § 1441(b)(2), *see, e.g.*, *Rogers v. Boeing Aerospace Operations, Inc.*, 13 F. Supp. 3d 972, 978 (E.D. Mo. 2014); *Tillman*, 2021 WL 842600, at *2 (collecting cases).

Several courts in this District have held that strict adherence to the language of § 1441(b) would be inconsistent with the fundamental purposes of removal and in contravention of the legislative intent behind the forum defendant rule. *See Hensley v. Forest Pharms., Inc*., 21 F. Supp. 3d 1030, 1035-36 (E.D. Mo. 2014); *Bailey v. Monsanto Co*., 176 F. Supp. 3d 853, 858 (E.D. Mo. 2016); *Laster v. Monsanto*, 2018 WL 1566846, at *3; *but see, e.g., Rogers*, 13 F. Supp. 3d at 977 (holding that the plain language of the statute must be followed but recognizing an exception for the "egregious" scenario where a defendant has "hawked" the state court docket and removed a case before service to any defendant has occurred).

This Court adopts the *Hensley* approach. To apply the "properly joined and served" language blindly when defendants can learn of lawsuits long before formal service on all parties "is to eviscerate the purpose of the forum defendant rule." *Sullivan*, 575 F.Supp.2d at 647. Moreover, the forum defendants were served only shortly after the non-forum defendants.

Removal by non-forum defendants under such circumstances clearly contravenes the rationale underlying the forum defendant rule. *Perez*, 902 F.Supp.2d at 1244.  Therefore, the Court finds that it does not have jurisdiction under 28 U.S.C. §1332.

### b.  Amount in Controversy

Moreover, even if "snap removal" applies, the Court still grants Plaintiff's Motion to Remand because the Removing Defendants have not adequately pleaded that the amount in controversy exceeds $75,000.  That is, Removing Defendants "did not set forth specific facts or evidence demonstrating the requisite jurisdictional amount." *Austin v. Harris-Stowe State Univ.*, No. 4:21-CV-00012-SRC, 2021 WL 2313404, at *1 (E.D. Mo. June 7, 2021).

Under 28 U.S.C. § 1332, federal district courts have original jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a)(1). In determining whether a case meets the jurisdictional minimum for diversity jurisdiction, the Court must look to the amount in controversy at the time of removal. *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969) ("It is the situation at the time of removal which is determinative.").

The defendant must prove the "jurisdictional fact" of the amount in controversy by a preponderance of the evidence. *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002). The "preponderance of the evidence" standard requires a defendant to demonstrate "by sufficient proof that a plaintiff's verdict reasonably may exceed" the jurisdictional amount. *City of University City v. A.T. & T. Wireless Services, Inc.*, 229 F.Supp.2d 927, 932 (E.D. Mo. 2002). "The jurisdictional fact...is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are[.]" *Kopp*, 280 F.3d at 885; *Hartis v.*

*Chicago Title Ins. Co.*, 656 F.3d 778, 781 (8th Cir. 2009) (A defendant need only show a fact finder could legally award more than $75,000). When calculating the amount in controversy, punitive damages and statutory attorney's fees are included in the amount in controversy. *Peterson v. The Travelers Indemnity Company*, 867 F.3d 992, 995 (8th Cir. 2017); *Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005); *Walz v. FedEx Office and Print Services, Inc.*, 2012 WL 5386058, at *2 (W.D. Mo. 2012). The defendant's burden is a pleading requirement, not a demand for proof. *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013). To meet its burden, however, the removing party must present "some specific facts or evidence demonstrating that the jurisdictional amount has been met." *Hill v. Ford Motor Co.*, 324 F.Supp.2d 1028, 1036 (E.D. Mo. 2004); *Austin*, 2021 WL 2313404, at *2. Once a defendant explains how damages can *plausibly* exceed $75,000, a plaintiff seeking remand must demonstrate it is legally impossible to recover more than $75,000. *Joyce v. Wal-Mart Stores E. I., L.P.*, 2019 WL 320596, at *1 (W.D. Mo. Jan. 24, 2019) (emphasis added).

Here, Removing Defendants state, without further explanation or support, "[t]he amount in controversy exceeds $75,000, in accordance with 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1441(a)." Notice of Removal, ¶ 8; *see also* Notice of Removal, ¶ 10 ("There being complete diversity between the properly joined parties and the amount in controversy exceeding $75,000, the present lawsuit is properly removable from the Circuit Court of the County of St. Louis, State of Missouri to the United States District Court for the Eastern District of Missouri, pursuant to 28 U.S.C. §1332(a)(1) and §1441(a)."); Notice of Removal, ¶ 102 ("This Court has diversity jurisdiction over this action, under 28 U.S.C. §1332(a)(1) and §1441(a)-(b), because there exists complete diversity between the properly joined parties and the amount in controversy exceeds $75,000."). Thus, the Court finds that Removing Defendants have not alleged any jurisdictional

facts to support a finding that the amount in controversy exceeds $75,000.[4]  The Court holds that Removing Defendants' blanket statements that the amount in controversy exceeds $75,000 are insufficient as a matter of law and find no diversity jurisdiction.

### 2. Federal Question Jurisdiction

#### a. Federal Jurisdiction under the PREP Act

The PREP Act, enacted in 2005, partially shields from liability providers of "covered countermeasure[s]" during public health crises. 42 U.S.C. §§ 247d-6d, 6e. The Act gives the Secretary of Health and Human Services (HHS) the authority to declare a public health emergency and recommend the "manufacture, testing, development, distribution, administration, or use" of certain countermeasures, as defined by the Secretary. 42 U.S.C. § 47d-6d(b)(1). Once the Secretary has declared an emergency, covered entities are no longer liable under federal or state law for "loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). Although victims cannot sue covered entities for negligently deploying countermeasures, victims can file for compensation from the Covered Countermeasure Process Fund. 42 U.S.C. §§ 247d-6e(a)–(b)(1). Under the PREP Act, there is an exception for willful misconduct. 42 U.S.C. § 247d-

---

[4] Even if the Court considered Plaintiff's Petition, the amount in controversy has not been adequately alleged to allow for federal diversity jurisdiction.  Plaintiff alleges that he "sustained losses because of Willis Cagle's death in the nature of loss of services, companionship, comfort, instruction, guidance, counsel, training and support."  (Pet., ¶ 100).  In his prayer for relief, Plaintiff asks for "judgment against Defendants for a sum that a jury determines to be fair and reasonable, for actual and punitive damages together with the costs and expenses herein occurred, attorneys' fees and for such other relief this Court deems just and proper."  (Pet., pp. 14, 16, 17).  There are no specific allegations that that Plaintiff's damages exceed $75,000.

6d(d)(1).[5] Any willful-misconduct claim must be brought in the District Court for the District of Columbia. 42 U.S.C. § 247d-6d(e)(1).

On March 17, 2020, the Secretary of HHS declared a public health emergency, triggering immunity under the Act. *See* 85 Fed Reg. 15,198. The Declaration defines covered countermeasures as "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19," its transmission, or the transmission of a COVID-19 mutation. *Id.* at 15,202. Though published in the Federal Register in March, the Declaration states that it became effective on February 4, 2020. *Id.* at 15,198. The Secretary has since issued ten amendments to the original declaration. *Walsh v. SSC Westchester Operating Co. LLC*, No. 20 CV 4505, 2022 WL 846901, at *5 (N.D. Ill. Mar. 22, 2022) (citing 87 Fed. Reg. 982–83); *see* https://aspr.hhs.gov/legal/PREPact/Pages/default.aspx (last visited July 20, 2022).

Plaintiff's Petition pleads no federal claim on its face. Rather, the Complaint alleges claims of wrongful death, negligence, and loss of chance of survival. *See* Petition, Counts I-III. Even if some of these claims implicate or are preempted by federal law by way of an affirmative defense, such defenses do not appear on the face of the well-pleaded complaint, and accordingly do not authorize removal to federal court. *See Metro. Life*, 481 U.S. at 63; *Franchise Tax Bd.*, 463 U.S. at 14; *Gully*, 299 U.S. at 116; *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998) ("Generally, a complaint that pleads only state law causes of action may not be removed to

---

[5] Willful misconduct is defined as "an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." 42 U.S.C. § 247d-6d(c)(1)(A).

federal court even where Congress has chosen to regulate the entire field of law in the area in question.").

Defendants argue that despite the lack of federal question on the face of the Petition, this action can be removed. *See* ECF No. 27, p. 7-14.  As discussed herein, the Court disagrees and finds no federal jurisdiction.

### b.  The PREP Act does not Establish Complete Preemption

"The PREP Act 'protects certain covered individuals—such as pharmacies and drug manufacturers—from lawsuits during a public-health emergency.'" *Yarnell*, 2022 WL 1716244, at *3 (quoting *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 400 (3d Cir. 2021). "A covered person under the PREP Act includes: (A) the United States or (B) a person or entity that is: (i) a manufacturer of [a covered] countermeasure; (ii) a distributor of such countermeasure; (iii) a program planner of such countermeasure; (iv) a qualified person who prescribed, administered, or dispensed such countermeasure; or (v) an official, agent, or employee of a person or entity described in clauses (i), (ii), (iii), or (iv). *Id.* § 247d-6d(i)(2)." *Rachal v. Natchitoches Nursing & Rehab. Ctr. LLC*, No. 1:21-CV-00334, 2021 WL 5449053, at *4 (W.D. La. Apr. 30, 2021). Upon determining that a threat to health amounts to a public health emergency, the Secretary of the Department of Health and Human Services ("HHS") may invoke the Act by publishing a declaration in the Federal Register, "recommending ... the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures, and stating that subsection (a) [of the Act] is in effect ..." 42 U.S.C. § 247d-6d(b)(1). Under subsection (a), a covered person is immune from liability "with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure ..." 42 U.S.C. § 247d-6d(a)(1); *see also Sherod v. Comprehensive Healthcare*

*Mgmt. Serv., LLC*, 20cv1198, 2020 WL 6140474, at *6 (W.D. Pa. Oct. 16, 2020) (quoting *Jackson v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2259-HLT-JPO, 2020 WL 4815099, at *5 (D. Kan. Aug. 19, 2020)); *Yarnell*, 2022 WL 1716244, at *3. Courts "examine the text and structure of a statute to determine" whether Congress clearly intended "to preempt an area of state law." *Peters*, 80 F.3d at 261.

Initially, Defendants argue that this Court has subject matter jurisdiction because the PREP Act provides for complete preemption and is not simply an affirmative defense.  (ECF No. 27 at 7-13).  "In determining whether to apply the doctrine of complete preemption, the Court asks two questions. Does a federal provision preempt the state law relied on by the plaintiff? And has Congress created an exclusive federal cause of action meant to displace all state claims, such that the claim is removable?"  *Robertson v. Big Blue Healthcare, Inc.*, 523 F. Supp. 3d 1271, 1281 (D. Kan. 2021) (citing *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1205 (10th Cir. 2012); *see also Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003).

Defendants argue that "[b]ecause the PREP Act provides the exclusive cause of action, procedure, or remedy for losses [or] injuries directed cause by the administration or use of a 'Covered Countermeasure' by [a] 'Covered Person,' the complete preemption doctrine is implicated and, even where State law claims are made, the claims in actuality are based upon Federal law, and Federal question jurisdiction exists."  (Notice of Removal, ¶ 45).  That is, Defendants maintain that the "PREP Act wholly displaces State law causes of action for claims falling under the purview of the PREP Act and declarations issued pursuant to the PREP Act." (ECF No. 1, ¶ 45 (citing *Rachal v. Natchitoches Nursing & Rehab. Ctr. LLC,* No. 1:21-CV-00334, 2021 WL 5449053, at *5-6 (W.D. La. Apr. 30, 2021)); *Garcia v. Welltower OpCo Grp. LLC*, 522 F. Supp. 3d 734, 743 (C.D. Cal. 2021) (holding the PREP Act provides for complete

preemption)).  Removing Defendants argue that they were acting as "Covered Persons" in their use, administration, and distribution of "Covered Countermeasures" pursuant to the PREP Act and Declaration."  (Notice of Removal, ¶ 59).

Defendants argues that "[b]ecause the PREP Act provides the exclusive cause of action, procedure, and remedy for injuries caused by the administration or use of a 'Covered Countermeasure' by and 'Covered Person' displaces any and all State law causes of action, and broad, all-encompassing language throughout the PREP Act demonstrates Congress intended only Federal courts to have jurisdiction over questions of PREP Act application and immunity, the compete preemption doctrine is implicated."  (ECF No. 27 at 9 (citing *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021)).

Defendants contend that Plaintiff's Petition "specifically alleges deficiencies in Defendants' response to COVID-19 pandemic and their actions concerning use, allocation, and administration of PPE and infection control procedures."  (ECF No. 27 at 10).  Defendants argue that Plaintiff's allegations that "Defendants improperly administrated their COVID-19 infection control countermeasure program which encompassed Defendants' decisions related to how, when, and where to use and allocate covered countermeasures and how to manage and operate Defendants' center in response to the COVID-19 pandemic."  (*Id*.)  Defendants claim that this response fits "squarely within the scope of the PREP Act and the protections it provides." (*Id*.)  Defendants argue that "Plaintiff should seek recovery through the Covered Countermeasures Process Fund[,] which was enacted and funded for this very purpose."  (ECF No. 27 at 11).

Defendants also note that Congress provided a right to interlocutory appeal to the D.C. Circuit for orders denying an assertion of immunity from suit under the PREP Act.  (ECF No. 27

at 12 (citing 42 U.S.C. § 247d-6d(e)(10)).  Defendants argue that the PREP Act's interlocutory appeal provide would require the D.C. Circuit to exercise jurisdiction over interlocutory appeals from State courts, which would be contrary to the rule that the Supreme Court is the only Federal court with jurisdiction over appeals from State court judgments and lower Federal courts do not have jurisdiction to review State court decisions.  (ECF No. 27 at 12).

The Court finds that Plaintiff's Petition does not relate to Defendants' use of countermeasures, which would implicate the PREP Act. The Court holds that Defendants' interpretation extends the reach contemplated by the PREP Act. "The claim seems to be precisely the opposite: that inaction rather than action caused the death." *Jackson v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2259-HLT-JPO, 2020 WL 4815099, at *6 (D. Kan. Aug. 19, 2020)Plaintiff's Petition alleges that the decedent died of COVID-19 because Defendants failed to take preventative measures to stop the entry and spread of COVID-19 within the facility. Plaintiff contends that Defendants' failure to take those precautions led to the decedent contracting and dying of COVID-19. Indeed, Plaintiff refers repeatedly to Defendants' "failures" which resulted in the death of Willis.  *See* Pet., ¶ 94. Plaintiff's Petition does not suggest that the decedent's death was causally connected to Defendants' administration or use of any drug, biological product, or device (i.e. a covered countermeasures). *See* 42 U.S.C. § 247d-6d(a)(2)(B) ("The immunity under paragraph (1) applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure[.]"); *see Walsh v. SSC Westchester Operating Co. LLC*, No. 20 CV 4505, 2022 WL 846901, at *5 (N.D. Ill. Mar. 22, 2022)("In cases similar to this, courts across the country have found that the PREP Act "is designed to protect those who employ countermeasures, not those who decline to employ them" and declined to find any liability in cases of inaction); *Est. of Maglioli*, 478 F. Supp. 3d at 531;

*Mackey v. Tower Hill Rehab., LLC*, 569 F. Supp. 3d 740, 746 (N.D. Ill. 2021) (quoting *Maglioli*); *Martin*, 2021 WL 4313604, at \*3 (same); *Ruiz*, 2021 WL 3056275, at \*2 (same); *Dupervil*, 516 F. Supp. 3d at 255–56 (noting a "growing consensus among courts across the country" that state-law claims for failure to protect are not covered by the PREP Act because they involve nonfeasance as opposed to misfeasance). The Court agrees with those courts that read the Act and relevant regulations to exclude inaction from its coverage.

Court finds that Plaintiffs' claims are premised on a failure to take preventative measures to stop the spread of COVID-19, and that none of the harm alleged was causally connected to the administration or use of any covered countermeasure—the focus of the PREP Act. *See Robertson v. Big Blue Healthcare, Inc.*, 523 F. Supp. 3d 1271, 1282 (D. Kan. 2021) (citing *Jackson*, 2020 WL 4815099, at \*6-8. The Court finds that the PREP Act is not implicated by Plaintiff's Petition and, therefore, the PREP Act does not preempt Plaintiff's state causes of action.

### c. Grable Doctrine

Under the *Grable* doctrine, a Federal court should hear State law claims which raise substantial questions of Federal law.  (ECF No. 27 at 13); *see Grable*, 545 U.S. at 312 ("The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]"). "This exception to the well-pleaded complaint rule applies to 'a special and small category of cases,' where 'a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Dupervil v. All. Health Operations, LCC*, 516 F. Supp. 3d 238,

257 (E.D.N.Y. 2021) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (internal quotation marks and citations omitted); *accord New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016)). If any of the four requirements is not satisfied, the exception does not apply. *See Gunn*, 568 U.S. at 258; *Jacobson*, 824 F.3d at 315.

Defendants argue that "because the PREP Act provides the sole remedies for the claims advanced in the Petition for Damages, and to the extent Plaintiff claims Defendants did not comply with Federal guidelines or regulations are part of the failure to follow 'proper guidelines,' or to the extent that Plaintiff seeks to invoke the sole exception to the immunity provided under the PREP Act, *i.e.*, a claim for 'willful misconduct' (42 U.S.C.A. § 247d-6d(d)), removal is proper because the Petition for Damages presents an 'embedded federal question.'" (Notice of Removal, ¶ 46 (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable,* 545 U.S. at 314)).  Defendants rely upon the Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration ("Fourth Amendment"), which provides that "there are substantial federal legal and policy issues, and substantial federal legal and policy interests, in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities." (Notice of Removal, ¶ 61).  *See* https://www.phe.gov/Preparedness/legal/prepact/Pages/4-PREP-Act.aspx (last visited 6/27/22).

Defendants argue that "Plaintiff's claims raise substantial questions regarding the meaning and application of the PREP Act, thus mandating a uniform Federal approach to the Act's interpretation and application."  (ECF No. 27 at 13).  Defendants argue that a "whole-of-nation" response to COVID-19 implicates Defendants' implementation of countermeasures and infection control practices in preventing the spread of COVID-19.  (ECF No. 27 at 14).

Likewise, Defendants argue that their activities are tied to CDC and CMS directives, mandates, and guidance, and their guidance "should be afforded uniform application and interpretation which Federal courts are best suited to do."  (ECF No. 27 at 14).

Here, none of Plaintiff's claims "necessarily" raise a federal issue. "A state-law claim 'necessarily' raises federal questions when the claim is affirmatively 'premised' on a violation of federal law." *Jacobson*, 824 F.3d at 315 (quoting *Grable*, 545 U.S. at 314); *see also Franchise Tax Bd.*, 463 U.S. at 13, (observing that original federal jurisdiction may lie where "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims"). As the Petition establishes, none of Plaintiff's various claims of negligence, wrongful death, or lost chance of survival pursuant to §537.021 are affirmatively premised on the PREP Act, nor is the PREP Act an essential element of any of Plaintiff's claims. *Dupervil*, 516 F. Supp. 3d at 257–58.  "[T]he PREP Act, a statute affording immunity, is not an essential element of any of Plaintiff's claims"  *Dupervil*, 516 F. Supp. 3d at 259; *cf. Grable*, 545 U.S. at 314–15.[6]

Thus, this Court concludes that Plaintiff's claims do not present an embedded question under *Grable*. The federal issue raised by the Removing Defendants relates to their potential defense, not the claims alleged by Plaintiff. "As such, the federal issue is not necessarily raised." *Winn v. California Post Acute LLC*, 532 F. Supp. 3d 892, 900 (C.D. Cal. 2021)(finding no *Grable* issue); *see also Robertson v. Big Blue Healthcare, Inc.*, 20-cv-02561, 2021 WL 764566, at *11 (D. Kan. Feb. 26, 2021) ("To be certain, Defendants intend to assert the PREP Act as a

---

[6] Conversely, the plaintiff in *Grable* "premised its superior title claim [*i.e.*, its well-pleaded state-law claim] on a failure by the IRS to give it adequate notice, *as defined by federal law*." The *Grable* Court therefore concluded: "Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim[.]" *Id.* at 315.

defense to Plaintiff's claim. But that is not enough."); *Dupervil* 2021 WL 355137, at \*14 ("[T]his only shows that Defendants may have an affirmative defense to Plaintiff's claims, not that Plaintiff's claims are affirmatively premised on, or on their face necessarily require resolution of, the PREP Act.").

### d.  Federal Officer

Title 28 U.S.C. § 1442(a)(1) "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction." *Johnson v. Showers,* 747 F.2d 1228, 1229 (8th Cir.1984) (quotation omitted). Section 1442 allows removal to a federal forum of any civil or criminal action against "[t]he United States or any agency thereof or any officer (or any person acting under that officer ) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). "When the removing party is not itself a federal officer or agency, it may remove a case only if it shows that it was 'acting under' a federal officer or agency in carrying out the acts that underlie the plaintiff's complaint." *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021) (citing *Watson v. Philip Morris Cos*., 551 U.S. 142, 147 (2007)). "Four elements are required for removal under § 1442(a)(1): (1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between the defendant's actions and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a 'person,' within the meaning of the statute." *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012) (citing *Dahl v. R.J. Reynolds Tobacco Co.,* 478 F.3d 965, 967 n. 2 (8th Cir. 2007). While not limitless, "[t]he words 'acting under' are broad," and the Supreme Court "has made clear that the statute must be 'liberally

construed.'" *Watson,* 551 U.S. at 147 (quoting *Colorado v. Symes,* 286 U.S. 510, 517 (1932));
*Jacks*, 701 F.3d at 1230.

As to the first criterium, Removing Defendants argue that "COVID-19 Pandemic
healthcare providers—like Defendants—were designated as part of the 'critical infrastructure' of
the United States, and these private actors were required to overhaul their operations and
practices (e.g., visitation, communal activities, screening, quarantine, etc.) in order to comply
with new, ongoing and detailed CMS and CDC instructions and demands designed to carry out
basis and necessary governmental tasks."   (ECF No. 27, pp. 15-16).  Second, Removing
Defendants argue that the PREP Act raises a colorable Federal Defense because their "alleged
wrongful acts were again taken to comply with Federal directives issued by CMS and the CDC,
and other Federal Government agencies and officers, in response to the COVID-19 pandemic."
(ECF No. 27, p. 16).   Third, Removing Defendants contend that Plaintiff's claims allege
Defendants improperly administered a COVID-19 infection control countermeasures program,
which was "squarely within the scope of the PREP Act and the protections it provides."  (ECF
No. 27, p. 17).

The Court finds that Defendants fail to demonstrate their actions confer federal officer
jurisdiction.  First, "[a] private firm's compliance (or noncompliance) with federal laws, rules,
and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a
federal 'official.'" *Watson*, 551 U.S. at 153; *Buljic*, 22 F.4th at 739.  "Instead, the private entity
must help federal officers fulfill 'basic governmental tasks.'" *Buljic*, 22 F.4th at 739 (citing
*Watson*, 551 U.S. at 153–54; *Graves v. 3M Co.*, 17 F.4th 764, 769 (8th Cir. 2021); *Jacks*, 701
F.3d at 1231. The Court holds that the designation of nursing home as a pandemic healthcare
provider does not make Defendants federal officers. *Yarnell*, 2022 WL 1716244, at *2 (cleaned

up) (citing *Buljic*, 22 F.4th at 740) ("However, the federal government's mere designation of an industry as important—or even critical is not enough to federalize an entity's operations and confer federal jurisdiction.").

Similar to the instant case, the Court in *Est. of Maglioli v. Andover Subacute Rehab. Ctr. I* found that the nursing home Defendants were not acting under a federal officer or agency.  *See Est. of Maglioli*, 478 F. Supp. 3d at 535 ("the only connection to the federal government is that Defendants—owners and operators of privately owned nursing facilities—[were] required to comply with detailed federal regulations when operating these facilities and when providing care").  Likewise, several other federal courts have found federal officer jurisdiction for long-term healthcare facilities addressing government-imposed COVID regulations.  The Court agrees with those decisions and finds federal officer jurisdiction lacking in cases involving long-term care facilities.  *See, e.g., Yarnell*, 2022 WL 1716244, at *3 ("the Court finds that Defendant cannot satisfy the first element of federal officer jurisdiction, rendering removal unwarranted under 28 U.S.C. § 1442, and the Court need not consider the remaining required elements"); *Dupervil v. All. Health Operations, LCC*, 516 F. Supp. 3d 238, 261 (E.D.N.Y. 2021) ("Defendants are not persons 'acting under' a federal officer, and do not otherwise qualify for federal-officer removal"); *Est. of McCalebb v. AG Lynwood, LLC*, No. 2:20-CV-09746-SB-PVC, 2021 WL 911951, at *6 (C.D. Cal. Mar. 1, 2021) ("But even if Defendant faced regulatory requirements, this alone does not establish that it was "acting under" a federal officer."); *Martin v. Serrano Post Acute LLC*, 20-cv-5937, 2020 WL 5422949 at *1 (C.D. Cal. Sept. 10, 2020) (quoting *Watson*, 551 U.S. at 153 (the directives that Defendant relies on are nothing more than "general regulations and public directives regarding the provision of medical services."); *Saldana v. Glenhaven Healthcare LLC*, 20-cv-5631, 2020 WL 6713995, at *3 (C.D. Cal. Oct.

14, 2020) (holding that where the defendants argued that "in taking steps to prevent the spread of COVID-19, [they] did so in compliance with CDC and CMS directives, which were aimed at helping achieve the federal government's efforts at stopping or limiting the spread of COVID-19," such general regulations and public directives were "insufficient" to confer jurisdiction under the federal officer removal statute).

Thus, the Court concludes that Defendants were not "acting under" a federal officer at the time that Plaintiff's father contracted COVID-19.  This case was not eligible for removal under the federal officer removal statute and must be remanded. *See Buljic,* 22 F.4th at 742.

In conclusion, the Court finds that lacks either federal question or diversity jurisdiction over this action and grants Plaintiff's Motion to Remand to the Circuit Court of St. Louis County, State of Missouri.

Accordingly,

**IT IS HEREBY ORDERED** Plaintiff's Motion to Remand (ECF No. 21) is **GRANTED**.  An appropriate Order of Remand is filed herewith.

Dated this 20th day of July, 2022.

*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**